UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-23877-RAR

**ALEXEY DUBININ**,

    Plaintiff,

v.

**VARSENIK PAPAZIAN**, *Miami Asylum Office Director,*
*United States Citizenship and Immigration Services*,

    Defendant.

_____/

**ORDER STRIKING COMPLAINT, ENTERING SANCTIONS, AND REFERRING
COUNSEL TO THE FLORIDA BAR AND GRIEVANCE COMMITTEE**

**THIS CAUSE** comes before the Court upon Plaintiff's responses to two Orders to Show Cause, [ECF Nos. 9, 12], prompted by counsel's cites to non-existent cases and quotations in a brief that appeared to be drafted using artificial intelligence. On November 17, 2025, the Court held an in-person show cause hearing ("Hearing") on this matter. [ECF No. 13].

On August 28, 2025, Plaintiff's counsel, Missiva Tilleli Khacer, filed a Complaint and Action in Mandamus and Under the Administrative Procedure Act ("Complaint") on behalf of an immigration client. [ECF No. 1]. Ms. Khacer, who is a member of the Florida Bar, was the only attorney to sign the Complaint. *Id*. at 9. On October 8, 2025, Defendant filed a Motion to Dismiss Plaintiff's Complaint ("Motion"). [ECF No. 5]. On October 23, 2025, Ms. Khacer filed Plaintiff's Response in Opposition to Defendant' Motion to Dismiss ("Response"). [ECF No. 6]. And on October 29, 2025, Defendant filed its Reply to Plaintiff's Response ("Reply"). [ECF No. 7].

Defendant's Reply pointed to several inaccuracies in Plaintiff's Response. Specifically, Defendant asserted that "Plaintiff's Counsel relied (1) on quotes that do not appear in binding Eleventh Circuit opinions and (2) a decision from this Court that does not exist . . . ." *Id*. at 5.

This was confirmed by the Court's independent review of the cases cited in Plaintiff's Response. Accordingly, the Court entered an Order to Show Cause listing at least ten instances where Plaintiff's Response cited to non-existent cases and quotes.[1] [ECF No. 8]. The Court ordered Ms. Khacer to show cause in writing "whether she intentionally, and with the use of generative artificial intelligence tools, made misrepresentations to the Court and why sanctions should not be imposed for misrepresentations of legal authority." *Id.* at 6.

In her response to the Order to Show Cause, [ECF No. 9], Ms. Khacer admitted to filing a brief riddled with inaccuracies but did not attribute these inaccuracies to the use of artificial intelligence. Instead, Ms. Khacer explained that she "delegated the drafting of the pleading to another attorney under Counsel's supervision" and "failed to independently review and verify each citation prior to filing." *Id.* at 1. The Court then ordered Ms. Khacer to disclose the name of the attorney who assisted in drafting the Complaint and the Response. [ECF No. 11]. Ms. Khacer filed another response where she identified the attorney in question as Nataliya Gavlin—a member of the New York Bar. [ECF No. 12]. Ms. Gavlin never entered an appearance in this case, nor did she seek *pro hac vice* admission.

Both Ms. Khacer and Ms. Gavlin appeared before the Court at the Hearing on November 17, 2025. [ECF No. 13]. The Court asked Ms. Gavlin whether she used artificial intelligence in drafting Plaintiff's Response. Ms. Gavlin denied using artificial intelligence herself but admitted that she delegated drafting to her legal assistant who did. The Court then asked Ms. Khacer about her litigation history within the Southern District of Florida, where she has filed numerous immigration mandamus actions over the past few years. In many of these cases, Ms. Khacer failed

---

[1] Notably, while not as egregious as the use of AI in her Response, the Court, in its Order to Show Cause, [ECF No. 8], noted the potential presence of hallucinated cases in Plaintiff's Complaint as well. Defendant confirmed this concern at the Hearing.

to respond to Defendant's motion to dismiss, resulting in the issuance of orders to show cause; moreover, these show cause orders have often gone unanswered by Ms. Khacer, resulting in several dismissals for failure to prosecute and/or failure to follow court orders. *See, e.g.*, *Osipian v. Papazian*, No. 25-22426-KMW (S.D. Fla.); *Shchukin v. Papazian*, No. 25-21560-RKA (S.D. Fla.); *Shakhmantau v. Papazian*, No. 25-20108-MD (S.D. Fla.); *Stashkov v. Papazian*, No. 23-23804-FAM (S.D. Fla.). Notably, in *Osipian*, Judge Williams' order granting Defendant's motion to dismiss by default specifically flagged that Ms. Khacer's response may have been drafted using artificial intelligence.[2] Ms. Khacer noted that Ms. Gavlin also assisted her with these cases and others, even though Ms. Gavlin is not a member of the Florida Bar and never sought *pro hac vice* admission. And while Ms. Khacer cited medical issues to excuse her inability to diligently prosecute these cases, she failed to explain why she continued taking on new clients in light of her personal difficulties.

Given Ms. Khacer's misconduct in this case and others, including her misrepresentations to the Court, sanctions are appropriate. *See ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1351 (S.D. Fla. 2025). Courts rely on the Federal Rules of Civil Procedure in assessing sanctions before turning to their inherent powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Federal Rule of Civil Procedure 11(b)(2) provides that, by filing a pleading or motion with the court, an attorney certifies "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law

---

[2] *Osipian*, No. 25-22426, ECF No. 11, at 2 n.1 ("It appears that the Response may have been generated using artificial intelligence software, given the presence of several peculiarities unlikely to exist in a filing drafted by a lawyer. First, the Response is titled as a response to "Defendant's Anticipated Motion to Dismiss," despite the fact that Defendant had already filed its Motion, and the Court had specifically made Plaintiff aware of this in its September 5 Order (DE 8). Second, as a single-spaced document with no pagination, the Response does not comply with basic formatting requirements of Local Rule 5.1(a). Finally, the Response references 'Defendant's reliance on *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ("TRAC")[,]' despite Defendant never citing that case nor the TRAC factors by name in its Motion. (DE 7 at 2).").

or for establishing new law." FED. R. CIV. P. 11(b)(2). A court can impose an appropriate sanction on an attorney who violates Rule 11(b) on its own initiative. *See* FED. R. CIV. P. 11(c)(1), (3). "The initiating court must [also] employ (1) a 'show-cause' order to provide notice and an opportunity to be heard; and (2) a higher standard ('akin to contempt') than in the case of party-initiated sanctions." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).

Federal courts also possess "certain 'inherent powers,' not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (cleaned up) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)). "To exercise its inherent power to impose sanctions, a court must find that the party acted in bad faith." *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-81140, 2025 WL 1440351, at *3 (S.D. Fla. May 20, 2025) (citing *McDonald v. Cooper Tire & Rubber Co.*, 186 F. App'x 930, 931 (11th Cir. 2006)). Courts employ a subjective bad-faith standard, which can be met if an attorney's conduct is so egregious that it could only be committed in bad faith. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1224–25 (11th Cir. 2017). While recklessness alone cannot constitute bad faith, a filing that is both reckless and frivolous can. *Id.* at 1223–25.

The Court may also impose sanctions pursuant to the Local Rules of the Southern District of Florida, which incorporate the Rules Regulating the Florida Bar. *See* S.D. Fla. Local R. 6(b)(2)(A). Regarding attorney competence, the Rules Regulating the Florida Bar state that a lawyer must keep abreast of changes in the law and its practice, "including an understanding of the benefits and risks associated with the use of technology, including generative artificial intelligence." Fla. R. Reg. Fla. Bar 4-1.1, Comment, Maintaining Competence.

Further, 28 U.S.C. § 1927 also permits the imposition of sanctions against an attorney who "engag[es] in practices that unnecessarily delay or increase the complexity of the litigation" so

long as the court finds "(1) the attorney engaged in unreasonable and vexatious conduct; (2) such conduct multiplied the proceedings; and (3) the amount of the award does not exceed the costs, expenses, and attorney's fees reasonably incurred due to such conduct." *Versant*, 2025 WL 1440351, at *3.

Courts in this District have found that sanctions are appropriate where counsel repeatedly used artificial intelligence to cite hallucinated cases and quotations. *See ByoPlanet*, 792 F. Supp. 3d at 1356 (finding that attorney's use of AI "led to repeated bad-faith misrepresentations to the Court" and justified sanctions including "monetary sanctions, referral to the Florida bar, and required notification to other courts and litigants"); *Versant*, 2025 WL 1440351, at *4 (finding that attorneys "violated Rule 11 in submitting a fake hallucinated case citation which allegedly supported a principle of law for which they were advocating.").

As in other cases where counsel submitted briefs laden with AI-generated cases and quotations, sanctions are appropriate here. Regardless of who exactly used artificial intelligence to draft Plaintiff's Response, only Ms. Khacer's name is on the signature block. *See ByoPlanet*, 792 F. Supp. 3d at 1354–55 (sanctioning attorney who "stated that he relied on a paralegal—a non-lawyer—to draft submissions to the Court and failed to review the paralegal's work before [he] filed these documents . . . ."). Thus, it is counsel's duty to ensure that all legal contentions are supported by existing law. *See* FED. R. CIV. P. 11(b)(2). Based on the gross legal inaccuracies in Plaintiff's AI-generated Response and Complaint, Ms. Khacer has not adequately discharged her duty. Moreover, Ms. Khacer's use of AI was "so egregious that this Court finds that [it was] done in bad faith." *ByoPlanet*, 792 F. Supp. 3d at 1355. Indeed, she "did not understand the benefits and risks associated with generative AI [which] led to repeated bad-faith misrepresentations to the Court." *Id*. at 1356. And her repeated misconduct across multiple cases in this District amounts

to "unreasonable and vexatious conduct, which multiplied the proceedings" and wasted Court resources. *Id.*

The Court is sympathetic to the fact that Ms. Khacer was suffering from medical issues which may have contributed to her lack of oversight and overreliance on artificial intelligence. But such issues do not serve as a license to obviate her ethical obligations. *See Landfall 2, Inc. v. Datascore-AI, LLC*, No. 22-80801, 2023 WL 2126121, at *19 (S.D. Fla. Feb. 8, 2023), *report and recommendation adopted*, No. 22-80801, 2023 WL 2276467 (S.D. Fla. Feb. 16, 2023) ("Although Plaintiff's counsel now blames his numerous failures to comply with this Court's Orders and to timely provide requisite discovery on a number of different health issues, Plaintiff's claim of medical issues came after the fact when Plaintiff and Plaintiff's counsel were confronted with potential sanctions." (citation omitted)). Ms. Khacer explained at the Hearing that her medical issues predated this case and similarly impacted other matters. However, when pressed by the Court on why she continued to take clients and file new complaints given her ongoing health concerns, Ms. Khacer demurred and did not offer any explanation.

Accordingly, the Court finds it appropriate to strike Plaintiff's Complaint, enter sanctions against Ms. Khacer in the form of attorneys' fees, and refer her to the Florida Bar and this Court's Ad Hoc Committee on Attorney Admissions, Peer Review, and Attorney Grievance ("Grievance Committee"). At the Hearing, Ms. Khacer did not contest these sanctions, and the parties conferred to determine the appropriate amount of attorneys' fees that she should owe to Defendant. As for Ms. Gavlin, despite neither being a member of the Florida Bar nor admitted to appear *pro hac vice*, she has clearly played an outsized—if not leading—role in this case and others brought in the Southern District of Florida by Ms. Khacer. Thus, the Court will also refer Ms. Gavlin to the Florida Bar and the Grievance Committee for an investigation into her relationship with Ms. Khacer and the nature of her conduct in this District.

Based on the foregoing, and pursuant to Rule 11, the Court's inherent authority, the Local Rules of the Southern District of Florida, and 28 U.S.C. § 1927, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Complaint is **STRICKEN**.

2. This case is **DISMISSED** *without prejudice*. All pending deadlines are **TERMINATED**, and any pending motions are **DENIED AS MOOT**. The Clerk is directed to **CLOSE** this case.

3. Attorney Missiva Tilleli Khacer is **ORDERED** to pay Defendant's attorneys' fees in the amount agreed upon by the parties at the Hearing—**$4,030.90** for an estimated **26.5 hours** spent on the case at a rate of **$152.11 per hour**.

4. Attorney Missiva Tilleli Khacer is **REFERRED** to the Florida Bar and the Grievance Committee for the appropriate discipline.

5. Attorney Nataliya Gavlin is **REFERRED** to the Florida Bar and the Grievance Committee for an investigation into whether any disciplinary action is warranted based on her activities within this District.

**DONE AND ORDERED** in Miami, Florida, this 21st day of November, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

**Copies Provided To:**

Alexey Dubinin
2961 Brighton 3rd Street, Apt. 1
Brooklyn, NY 11235